IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN L. RISNER, | ) | CASE NO. 1:06 CV 1953 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| OHIO DEPARTMENT OF | ) | **REPORT AND RECOMMENDATION** |
| REHABILITATION AND | ) | |
| CORRECTION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

On October 15, 2006, Plaintiff John L. Risner commenced this action in this Court by filing a *Complaint* against the Ohio Department of Rehabilitation and Correction, Parole Division ("ODRC"), Sharon Haines, Jill Goldhart, and Harry Hageman. (Doc. 1.)  Plaintiff alleged discrimination in violation of the Uniform Services Employment and Re-Employment Rights Act ("USERRA") 38 U.S.C. § 4301, *et seq.*

On November 20, 2006, Defendants filed an *Answer* to the *Complaint*. (Doc. 6.)  On July 26, 2007, the Court ordered the parties to submit simultaneous briefs on the issue of subject matter jurisdiction, pursuant to 38 U.S.C. 4323(b). (Doc. 12.)  On August 10, 2007, Plaintiff filed a *Brief in Support of Jurisdiction*. (Doc. 13.)  On the same day, rather than file a brief on the issue of subject matter jurisdiction, Defendants filed a *Motion for Judgment on the Pleadings*. (Doc. 14.)  On August 16, 2007, Plaintiff filed a *Motion for Leave to File a Brief in Response to Defendants' Motion for Judgment on the Pleadings*. (Doc. 15.)  On August 17, 2007, Defendants filed a *Response to Plaintiff's Brief in Support of Jurisdiction* (doc. 16), and Plaintiff filed a *Response in Support of*

*Jurisdiction* (doc. 17).  On August 24, 2007, the Court granted Plaintiff's *Motion for Leave to File*

*a Brief in Response to Defendants' Motion for Judgment on the Pleadings*, allowing Plaintiff until

September 13, 2007 in which to file his brief.  On September 13, 2007, Plaintiff filed an *Opposition*

to the *Motion for Judgment on the Pleadings.* (Doc. 19.)  On September 21, 2007, Defendants filed

an unopposed *Motion for Extension of Time* until October 1, 2007 in which to file a reply brief to

Plaintiff's *Opposition*. (Doc. 21.)  Defendants' *Motion for Extension of Time* was granted by the

Court on September 24, 2007, and Defendants filed a *Reply* to Plaintiff's *Opposition* on October 1,

2007 (doc. 22).  On March 31, 2008, Defendants' pending *Motion for Judgment on the Pleadings*

was referred to the Magistrate Judge for a Report and Recommendation.  For the reasons set forth

below, the Magistrate Judge recommends that the Motion be GRANTED in part and DENIED in

part.

## I. <u>FACTS</u>

Plaintiff alleges in his *Complaint* that he became employed by the ODRC as a Parole Officer

I in May 1994, and that by March 1999, he had become a Parole Officer II . (Doc. 1, ¶1.)  At that

time, Plaintiff applied for a promotion to the position of Parole Services Supervisor. (Id.)  Plaintiff

was informed by members of the interviewing panel that he was qualified for the position, but that

one obstacle to his obtaining the position was his status as an Air Force Reservist because if he was

called to active duty, he may be required to be away from the job for long periods of time. (Id.)

Plaintiff did not receive the promotion and was denied again for the same reasons when he applied

for the promotion again in September 1999. (Id.)  Had he obtained the promotion, Plaintiff hoped

to obtain a further promotion to Regional Administrator. (Id. at ¶2.)  This opportunity became

available to other Parole Services Supervisors after March 1999, but was not available to Plaintiff

because he had not received the first promotion to Parole Services Supervisor. (Id.)

In May 2000, Plaintiff underwent neck surgery for an injury he sustained while on military duty. (Doc. 1, ¶3.) Plaintiff's physician ordered Plaintiff to go on light duty to avoid risk of permanent injury in the event of any physical altercation with parolees and to prevent him from having to carry a firearm while on medication. (Id. at ¶41.) Plaintiff thereafter requested light duty work from ODRC, but was told that it was not available to parol officers. (Id. at ¶3.) Light duty was, however, available to Parole Services Supervisors, and therefore, would have been available to Plaintiff if he had been promoted to that position. (Id.) Because light duty was not available to Plaintiff, he was forced to go on disability leave, and consequently earn only a small portion of his salary, until December 2005, when he was able to return to work without restrictions. (Id. at ¶4.)

Plaintiff requested an internal investigation of Defendant Haines, one of the members of the interviewing panel and then Regional Administrator of the ODRC. (Doc. 1, ¶27-28.) On December 23, 1999, the United States Department of Labor ("U.S. DOL") concluded that Plaintiff's military commitment was a factor in the decision not to promote him to the position of Parole Services Supervisor. (Id. at ¶30.) Defendant Goldhart, Deputy Director of the Adult Parole Authority of the ODRC, had authority to overrule the interviewing panel and promote Plaintiff. (Id. at ¶29.) The U.S. DOL approached Defendant Goldhart and requested that she bring the department into compliance with USERRA by promoting Plaintiff, which Defendant Goldhart refused to do. (Id. at ¶30-31.)

Upon Plaintiff's returned to work on December 28, 2005, he was informed by another employee that she had heard Defendant Haines state that Plaintiff's military service made him ineligible for the promotion in 1999. (Doc. 1, ¶46-47.) As a result, Plaintiff requested the U.S. DOL reopen its investigation. (Id. at ¶48.) The U.S. DOL met with Defendant Goldhart's successor,

-3-

Defendant Hageman, who also refused to promote Plaintiff. (Id. at ¶49-50.)

Plaintiff alleges that by virtue of their willful actions, Defendants discriminated against him in violation of USERRA because of his military status as a member of the United States Air Force, Ohio Air National Guard Reserves. (Id. at ¶51-69.)

In the pending *Motion for Judgment on the Pleadings*, Defendants seek dismissal of all claims against them, contending that the Court does not have jurisdiction to hear Plaintiff's claims because Federal courts do not have jurisdiction in USERRA actions brought by "a person" against a state, and because they are entitled to sovereign immunity pursuant to the Eleventh Amendment.

## II. <u>LAW AND ANALYSIS</u>

### A. Legal Standard

A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Almendares v. Palmer*, 284 F. Supp. 2d 799, 802 (N.D. Ohio 2003).  The only difference between a Rule 12(c) paper and a Rule 12(b)(6) motion to dismiss is the timing of the motion. *Id.*  Thus, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether, "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'" *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), *quoting Bell Atlantic Corp. v. Twombly*, *U.S.*, 127 S.Ct. 1955, 1974 (2007).  Claims alleged in the complaint must be "plausible," not merely "conceivable." *Id.*  Dismissal is warranted if the complaint lacks an allegation pertaining to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

Federal courts are of limited jurisdiction and may exercise only those powers authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  It is presumed that a cause lies outside the limited jurisdiction of the federal courts, "and the burden of establishing the contrary rests on the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of North-America*, 4 U.S. 8, 1799); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)).

### B. USERRA Jurisdiction

The ODRC first contends that it is entitled to judgment on the pleadings because USERRA does not provide district courts with jurisdiction to review USERRA claims brought by a person against a state employer.  Defendant asserts that it is clear from the statutory language that Congress intended to limit USERRA suits brought by individuals against a state as an employer.  Plaintiff responds that it is the very fact that it is not clear from reading the language which has led this Court to direct the parties to brief the issue.

In determining the scope of a statute, the Court must first "begin with the language of the statute itself." *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 23 (1982).  If the plain language of the statute is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Coom'n v. GTE Sylvana, Inc.*, 447 U.S. 102, 108 (1980).  *See also United States v. Turkette*, 452 U.S. 576, 580 (1981).  However, courts may look beyond the plain language of a statute "if it leads to an interpretation which is inconsistent with legislative intent expressed elsewhere in the statute or legislative history, or to an absurd result." *AFGE, Local 1286 v. United States Dep't of Justic*, 738 F.2d 742, 744 (6th Cir. 1984) (quoting *S.E.C. v. Ambassador Church*

-5-

*Finance/Dev. Group, Inc.*, 679 F.2d 608, 611 (6th Cir. 1982).  *See also Chapman v. Higbee Co.*, 319 F.3d 825, 830 (6th Cir. 2003).

The pertinent text of USERRA states:

(b) Jurisdiction.

(1) In the case of an action against at State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.

(2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of jurisdiction in accordance with the laws of the State.

(3) In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.

38 U.S.C. § 4323 (b).  A plain reading of the statute indicates that it permits an individual to bring suit against a state as an employer in state court, but it does not expressly proscribe an individual from bringing the same suit in federal court.  Thus, contrary to the ODRC's position, the Magistrate Judge finds that the statutory language does not make clear Congress' intent to limit USERRA suits against states as employers to state courts.  Accordingly, the Magistrate Judge will consider the legislative history of the statute to ascertain Congress' intent.

When it was originally enacted, USERRA stated in pertinent part:

(b) In the case of an action against a State as an employer, the appropriate district court is the court for any district in which the State exercises any authority or carries out any function. In the case of a private employer the appropriate district court is the district court for any district in which the private employer of the person maintains a place of business.

(c)(1)(A) The district courts of the United States shall have jurisdiction, upon the filing of a complaint, motion, petition, or other appropriate pleading by or on behalf of the person claiming a right or benefit under this chapter–

(i) to require the employer to comply with the provisions of this chapter;

(ii) to require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter; and

(iii) to require the employer to pay the person an amount equal to the amount referred to in clause (ii) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

Pub. L. 103-353, §2(a), 108 Stat. 3149, 3165 (Oct. 13, 1994). The original version clearly indicated that federal courts had jurisdiction to hear USERRA actions brought against states as employers. In 1998, the language of USERRA was amended to its current version. *See* P.L. 105-369, Title II, Subtitle B, § 211(a), 112 Stat. 3329 (Nov. 11, 1998).

The House Committee Report explains the reason for the amendments:

Today, section 4323(a) of title 38, United States Code, provides that after the Secretary of Labor has investigated and validated a complaint of violation of USERRAs provisions, the aggrieved person may request that the Attorney General commence an action for appropriate relief in an appropriate United States district court. This provision applies to persons employed by either a State or private employer. As an alternative to requesting that the Attorney General represent the person in an action brought in United States district court, or if the Attorney General refuses to provide such representation, the person may choose to commence an action in the same United States district court with private representation. In two reported instances, a State has successfully raised the Eleventh Amendment as a bar to such private actions against States under section 4323(a). Velasquez v. Trustees of Indiana University, No. IP 96-0557-C H/G (S.D. Ind. Feb. 6, 1998); Palmatier v. Michigan Dept. of State Police, 981 F. Supp. 529 (W.D. Mich. 1997). In both cases, U.S. district courts have cited the Supreme Courts sweeping decision in Seminole Tribe as the basis for their decisions holding that veterans may not bring individual actions against States in Federal court to enforce State compliance with USERRA, and that section 4323 as currently written exceeds Congress constitutional authority.

These decisions threaten not only a long-standing policy protecting individuals employment right, but also raise serious questions about the United States ability to provide for a strong national defense. Far more than in the days when the Constitution was being drafted, the peace enjoyed throughout much of the world is dependent on the responsive and powerful armed forces of the United States. Accordingly, to assure that the policy of maintaining a strong national defense is not inadvertently frustrated by States refusing to grant employees the rights

-7-

afforded to them by USERRA, the committee is favorably reporting this legislation.

105th Congress, House Report 105-448 to accompany H.R. 3213, March 17, 1998.  With respect

to the amendments of subsections (b) and (c), the Committee Report states:

> Subsection (b) specifies that United States district courts have jurisdiction over an action brought by the United States against a state or private employer and over actions brought against a private employer by a person. Paragraph (2) would codify existing law that provides that state courts have jurisdiction to hear complaints brought by persons alleging that the State has violated USERRA.

> Subsection (c) specifies the appropriate venue for such actions and revises without substantive change existing subsection (b).

*Id.*

Citing *McIntosh v. Partridge*, No. H-06-1968, 2007 U.S. District LEXIS 3893 (S.D. Tex.

2007), Plaintiff asserts that the use of the word "may" and the Committee Report reflect Congress'

explicit intention to create concurrent jurisdiction of USERRA cases brought by a person against

a State as an employer.  In support, Plaintiff points out that the Report specifically cites *Velasquez*

and *Palmatier* as cases with which it did not agree and in those cases, citing the states' sovereign

immunity under the Eleventh Amendment, the district courts divested themselves of jurisdiction of

USERRA claims brought by individuals against state employers.  Plaintiff contends that the Report

indicates Congress' intent to push federal courts to exercise jurisdiction over USERRA claims

brought by individuals against state employers, and if the courts fail in that duty, allow military

personnel to file such claims in state courts.  The Magistrate Judge is inclined to agree.  However,

every district court that has addressed the issue, aside from the *McIntosh* court, has concluded

otherwise. *See Velasquez v. Frapwell*, 165 F.3d 593, 594 (7th Cir. 1999) (holding that the court

lacked jurisdiction over an USERRA claim brought by a person against a state employer because

the amendment to USERRA added a new section which unmistakably conferred only on state courts

jurisdiction over suits against a state employer); *Larkins v. Dep't of Mental Health*, No. 97-W-1536-N, 1999 U.S. Dist. LEXIS 9137, *3-5 (M.D. Ala. 1999) (holding that the court lacked jurisdiction to hear the an individual's USERRA claims against a state employer because after the 1998 amendments, jurisdiction over such claims lies exclusively with the state court); *Hostetler v. United States*, No. 2:05-cv-433, 2005 U.S. Dist. LEXIS 26071, *7 (S.D. Ohio 2005) (holding that district courts have jurisdiction to consider the rights of employment and preemployment under USERRA against a state employer only in actions commenced by the United States); *Veladez v. Regents of the Univ. of Cal.*, No. S-03-0433, 2005 U.S. Dist. LEXIS 21693, *12-15 (E.D. Cal. 2005) (concluding that federal district courts lack original jurisdiction over USERRA claims brought by individuals against state employers).

The court in *Veladez* found the argument that the permissive language in § 4323(b)(2) was not intended to exclude an individual from bringing a USERRA claim against a state employer in federal court to be undermined by the amended venue provisions of the statute:

> [T]he postamendment statute delimits venue only for USERRA claims brought either by the United States against a state employer or by anyone against a private party. Venue for USERRA claims brought by persons against state employers is conspicuously absent from the statute.  This omission makes sense when one considers that questions of venue are irrelevant to courts that lack subject matter jurisdiction over a given case.

2005 U.S. Dist. LEXIS 21693, at *12-13.  Plaintiff argues that the amended version's venue sections indicate Congress' intent to maintain expanded venue for actions brought by the Attorney General or brought against private employers.  Plaintiff further argues that existing law confers venue in district courts for USERRA actions brought by individuals against state employers, and thus, there was no need for Congress to insert a redundant venue provision for such suits in the statute.

Plaintiff has raised valid points with respect to the statutory construction and amendment of

the pertinent provisions of USERRA suggesting that it is intended to confer concurrent jurisdiction over USERRA claims brought by individuals against state employers.  The Magistrate Judge finds it troubling that all of the courts considering the issue have found the statute to clearly operate otherwise.   The Magistrate Judge does not believe that the statutory construction and Congress' intention is so clear, but even so, the Magistrate Judge ultimately must conclude that Plaintiff's action against the ODRC cannot lie because it is barred by the Eleventh Amendment.

### C. Sovereign Immunity

Defendants next contend that they are entitled to judgment on the pleadings because the Eleventh Amendment precludes Plaintiff from suing them in federal court.

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

U.S. Const. Amend. XI.  The Supreme Court has interpreted the Eleventh Amendment to prohibit citizens from suing a state in federal court except under limited circumstances. *See Alden v. Maine*, 527 U.S. 706 (1999).  There are three main exceptions to a state's sovereign immunity.  First, a state may waive its sovereign immunity by statute and consent to be sued in federal court. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974).  Second, Congress may abrogate the states' sovereign immunity if Congress "'unequivocally express[s] its intent to abrogate the immunity' . . . [and acts] 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  Finally, the Eleventh Amendment does not bar suits against state officials that seek prospective, injunctive relief, in the form of an order compelling state officials to comply with federal law. *Ex parte Young*, 209 U.S. 123 (1908); *Edelman*, 415 U.S. at

668.

## 1. Waiver

Plaintiff argues that sovereign immunity was waived by Ohio pursuant to its ratification of certain Article I powers. Plaintiff relies on *Cent. Virginia Community College v. Katz*, 546 U.S. 356 (2006) and *Alden* in support of this claim. Plaintiff asserts: "*Katz* determined that, in ratifying the Constitution, the States waived sovereign immunity in the bankruptcy arena because bankruptcy claims are rooted in Art. I., § 8 of the Constitution. By the same reasoning, in ratifying the same section of the same article of the same Constitution, the States have also waived immunity to the war powers clauses, Art. I, § 8 cl. 11-16, and to statutes passed pursuant to them like USERRA." (Doc. 19, at 1-2.) Plaintiff's arguments are not well taken.

In *Alden*, the Supreme Court explained that Congress cannot, by virtue of the Necessary and Proper Clause, override sovereign immunity as a means of achieving objectives within the scope of its enumerated powers. 527 U.S. at 732. However, because the states surrendered a portion of their prior sovereignty in adopting the Fourteenth Amendment, Congress may override sovereign immunity pursuant to its § 5 enforcement power when it enacts legislation to enforce this Amendment. *Id.* at 756 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Indeed:

> By imposing explicit limits on the powers of the States and granting Congress the power to enforce them, the Amendment fundamentally altered the balance of state and federal power struck by the constitution. When Congress enacts appropriate legislation to enforce this Amendment, . . . federal interests are paramount, and Congress may assert an authority over the States which would otherwise be unauthorized by the Constitution.

*Id.* (internal citation and quotation omitted).

In *Katz*, the Supreme Court considered the issue of sovereign immunity in the context of the bankruptcy clause, Article I, § 8, cl. 4. The Supreme Court held that the clause's history, the reasons

its was adopted, and the legislation proposed and enacted under it demonstrate that it was intended as a grant of authority to Congress and to authorize limited subordination of state sovereign immunity in the bankruptcy arena. *Katz*, 546 U.S. at 362-63.[1]

By the same token, Plaintiff argues that the states have waived immunity with respect to the war powers clauses, Art. I, § 8, cl. 11-16. To the extent Plaintiff contends Congress can override sovereign immunity in the exercise of its war powers, this supposition is clearly prohibited, as articulated in *Alden*. Plaintiff's argument that by ratifying the Constitution, the states waived sovereign immunity with respect to Congress' exercise of its Article I, § 8 powers is also unavailing. Although the Supreme Court determined in *Katz* that the states waived sovereign immunity in bankruptcy proceedings by ratifying Congress' Article I powers, the Court stressed that the exception for bankruptcy cases is a narrow one. The Court explained that "the Bankruptcy Clause's unique history, combined with the singular nature of bankruptcy courts' jurisdiction . . . have persuaded us that the ratification of the Bankruptcy Clause does represent a surrender by the States of their sovereign immunity in certain federal proceedings." *Katz*, 546 U.S. at 369 n.9. This case is an USERRA action and not a bankruptcy case, thus, this narrow exception does not apply. Moreover, the holding in *Katz* was made after extensive review of the clause's history, the reasons it was adopted, and the legislation proposed and enacted under it immediately following ratification of the Constitution. Plaintiff has not identified comparable evidence of the history of the War Powers clauses, the reasons they were adopted, or legislation enacted immediately following ratification indicating that the states waived sovereign immunity in USERRA actions by ratifying

---

[1]The Supreme Court also noted that bankruptcy jurisdiction is principally *in rem*, and therefore, it does not implicate states' sovereign immunity to the same degree as other kinds of jurisdiction.

Congress' Article I powers.  Accordingly, the Magistrate Judge concludes that Defendants have not waived sovereign immunity with respect to USERRA actions.

## 2. Abrogation

Plaintiff next argues that Congress abrogated state sovereign immunity with respect to USERRA.  In considering the issue of abrogation, the Court must first determine whether Congress "'unequivocally expressed its intent to abrogate the immunity.'" *Seminole Tribe*, 517 U.S. at 55 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  Plaintiff asserts that it is clear from the text of USERRA and the Committee Report that Congress explicitly intended to abrogate the states' sovereign immunity.  Section 4323(d)(3) of USERRA states: "A state shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section."  38 U.S.C. § 4323(d)(3).  This language suggests that Congress intended states to be subject to suit in USERRA actions.  As addressed previously, the Committee Report accompanying the 1998 amendments to USERRA expressed a discontent with recent district court cases in which states had successfully raised sovereign immunity as a bar to private USERRA actions brought against them. 105th Congress, House Report 105-448 to accompany H.R. 3213, March 17, 1998.  Thus, the Report also indicates Congress intended the states to be subject to suit in USERRA actions.  Assuming that Congress intended to abrogate states' sovereign immunity with respect to USERRA, the Court must still "determine whether Congress properly acted pursuant to a valid exercise of power" when it enacted USERRA. *Mixon v. NAACP*, 193 F.3d 389, 398 (6th Cir. 1999).

Plaintiff contends the *Diaz-Gandia* court already confirmed that Congress validly abrogated sovereign immunity under USERRA pursuant to its Article I powers.  In *Diaz-Gandia v. Dapena-Thompson*, 90 F.3d 609 (1st Cir. 1996), the First Circuit held that Congress removed the Eleventh

Amendment bar to damages actions brought under VRRA (the predecessor to USERRA).  The court explained that it was bound by its prior holding in *Reoppell v. Massachusetts*, 936 F.2d 12, 16 (1st Cir. 1991) because no subsequent development had undermined that decision.  *Id.* at 616.  The court reasoned that the recent *Seminole Tribe* decision, which held that Congress lacks power to abrogate sovereign immunity under the Commerce Clause did not control the war powers analysis.  *Id.* at n.9.  The *Diaz-Gandia* case is not controlling.  Moreover, the decision in *Diaz-Gandia* is undermined by the fact that *Reoppell* was based upon *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989), which was overruled by *Seminole Tribe*.[2]  This concern has been raised by a district court in the Sixth Circuit which questioned the decision in *Diaz-Gandia*.  In *Palmatier v. Michigan Dept. of State Police, et al.*, 981 F. Supp. 529 (W.D. Mich. 1997), the court points out that although Congress has the authority to abrogate immunity when it legislates pursuant to § 5 of the Fourteenth Amendment, USERRA was enacted pursuant to the War Powers Clause, Art. I, § 8, cl. 11, not pursuant to the Fourteenth Amendment.  The court further states:

> Applying the lesson of *Seminole Tribe*, it necessarily follows that Congress, acting under Article I, could not effectively abrogate the states' *Eleventh Amendment* immunity in USERRA.  This result is admittedly contrary to that reached in *Reoppell*

---

[2]"We think it clear that Justice Brennan's opinion [in *Union Gas*] finds Congress' power to abrogate under the *Interstate Commerce Clause* from the States' cession of their sovereignty when they gave Congress plenary power to regulate interstate commerce." *Seminole Tribe*, 517 U.S. at 61.  "Never before the decision in *Union Gas* had we suggested that the bounds of Article III could be expanded by Congress operating pursuant to any constitutional provision other than the *Fourteen Amendment*." *Id.* at 65.  "In the five years since it was decided, *Union Gas* has proved to be a solitary departure from established law." *Id.* at 66.  "In overruling *Union Gas* today, we reconfirm that the background principle of state sovereign immunity embodied in the *Eleventh Amendment* is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government.  Even when the Constitution vests in Congress complete law-making authority over a particular area, the *Eleventh Amendment* prevents congressional authorization of suits by private parties against unconsenting States." *Id.* at 72.

and *Diaz-Gandia*, where the First Circuit held Congress had in the VRRA, validly abrogated the states' immunity. Both *Reopell* and *Diaz-Gandia* are based on *Pennsylvania v. Union Gas Co.*, the case expressly overruled in *Seminole Tribe*. In the wake of *Seminole Tribe*, their continuing vitality is suspect. The Court therefore declines to follow them.

*Palmatier*, 981 F. Supp. at 531-32 (internal citation omitted).

In *Rotman v. Bd. of Trustees of Michigan State Univ.*, No. 1:96-cv-988, 1997 U.S. Dist. LEXIS 10754 (W.D. Mich. 1997), the same district court again considered the issue of abrogation with respect to the VRRA. Again, the court was not persuaded to follow *Reopell*, noting that it was probably not good law after *Seminole Tribe* because it relied on the reasoning of *Union Gas*. *Id.* at *6. The court rejected the plaintiff's contention that Congress had authority under its War Powers to abrogate states' sovereign immunity, relying on the Supreme Court's express statement in *Seminole Tribe* that "Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at *6-7.

The Magistrate Judge finds the reasoning in *Palmatier* and *Rotman* persuasive and chooses to follow it. Accordingly, the Magistrate Judge concludes that Congress did not validly abrogate the states' sovereign immunity in USERRA, which was enacted pursuant to Congress' Article I War Powers.

### 3. Injunctive Relief

The Court finds it appropriate to also address the third exception to a state's sovereign immunity. In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does not bar claims for injunctive relief against state officials in their official capacities. 209 U.S. 123. In order to qualify under the doctrine of *Ex parte Young*, such a claim must seek prospective relief against an ongoing violation of federal law. *See Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. Ohio

2002); *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. Mich. 2003); *MacDonald v. Vill. of Northport, Mich.*, 164 F.3d 964, 970-72 (6th Cir. 1999). Plaintiff's *Complaint* seeks injunctive relief requiring Defendants Haines and Hageman to refrain from discriminating against him on the basis of his military status, but does not specify whether he is suing Plaintiff's in their official or individual capacities. For the reasons articulated below, the Magistrate Judge concludes Plaintiff is suing Defendants Haines and Hageman in their individual capacities. Because Plaintiff does not seek relief against these Defendants in their official capacities, the *Ex parte Young* exception is unavailable.

### D. Defendants Haines and Hageman

Defendants argue that because Plaintiff failed to specify in his *Complaint* whether he is suing Defendants Haines and Hageman[3] in their individual or official capacities, by operation of law, these Defendants must be deemed to be sued in their official capacities, and thus, are entitled to Eleventh Amendment immunity.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself." *Printz v. United States*, 521 U.S. 898, 931 (U.S. 1997) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). Thus, the Eleventh Amendment bars Plaintiff's claims insofar as they seek relief, other than prospective injunctive relief, from Defendants Haines, Goldhart, and Hageman in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). However, the Eleventh Amendment does not bar Plaintiff's claims insofar as they seek

---

[3]Defendant Goldhart was dismissed for failure to serve her in a timely fashion. Plaintiff believes that once he is able to take discovery from the ODRC he will be able to serve her and will move for reconsideration of her dismissal.

monetary damages from the individual Defendants in their individual capacities. *See Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. Mich. 2006).

The Sixth Circuit applies a "course of proceedings" test to determine whether a defendant has received adequate notice that a plaintiff intended to subject him or her to personal liability. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001).  The Court explained:

> The "course of proceedings" test considers such factors as the nature of the plaintiffs claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. . . . The test also considers whether subsequent pleadings put the defendant on notice of the capacity in which he or she is sued. We are mindful of the timing of subsequent filings not, as the officers suggest, because they must be filed practically contemporaneous to the opinion, but rather to determine whether the parties are still in the early stages of litigation. This ensures both fairness to defendants, . . ., and the resolution of any jurisdictional problems at an early stage.

*Id.* at 772 n.1.  A recent Sixth Circuit case applied the "course of proceedings" test explained in *Moore* and concluded that the defendants were aware of potential liability in their individual capacities.  In *Garcia v. Dykstra*, No. 06-2315, 2008 U.S. App. LEXIS 2191, 17-18 (6th Cir. 2008), the Court noted that the complaint and amended complaint did not specify whether the defendant officers were named in their individual capacities and stated the officers were acting under color of their authority as police officers at all times.  The amended complaint, like the original complaint, alleged a § 1983 claim and several state claims against all defendants collectively and prayed for compensatory damages on each claim against defendants as a group without mentioning any defendant by name. *Id.*  The court held that because the officers asserted the defense of qualified immunity in both their answer and their amended answer, they showed that they were in fact on notice of the possibility of an individual capacity § 1983 claim by the time they filed both of these pleadings. *Id.*  The court concluded that "the demand for money damages, along with something

-17-

more, here the qualified immunity defense asserted in the answer and amended answer, demonstrates that [the officers] were aware of potential liability in their individual capacities." *Id.*

Similarly, in the present case, Plaintiff did not specify whether Defendants Haines and Hageman were named in their individual or official capacities. Plaintiff's *Complaint* was filed on August 15, 2006. On November 20, 2006, Defendants filed their *Answer*, in which they raised the affirmative defense of qualified immunity for Haines and Hageman. (Doc. 5.) A Case Management Conference was held on July 26, 2007, at which time a scheduling order was docketed ordering pleading amendments due by October 19, 2007, discovery due by February 1, 2008, and dispositive motions by March 17, 2008. (Doc. 9.) On August 10, 2007, Defendants filed their *Motion for Judgment on the Pleadings*, in which they argue that Plaintiff failed to specify in which capacity he is suing Defendants Haines and Hageman. (Doc. 14.) On September 13, 2007, Plaintiff filed a *Response* in which he asserts that he is suing Haines and Hageman in their individual capacities. (Doc. 19.) As in *Garcia*, the fact that Plaintiff's *Complaint* demands money damages and that Defendants asserted the affirmative defense of qualified immunity in their *Answer* demonstrates that Defendants Haines and Hageman "were aware of potential liability in their individual capacities." Moreover, Plaintiff's *Response*, in which he clarifies that he is suing Haines and Hageman in their individual capacities, was filed prior to the expiration of time in which to file amendments to the pleadings. Plaintiff requested in his *Response* that the Court allow him to amend the *Complaint* to specify that the individual Defendants are being sued in their individual capacities, if the Court deemed this action necessary. For the foregoing reasons, the Magistrate Judge concludes that Defendants Haines and Hageman are being sued in their individual capacities.

Plaintiff points out that there is no argument that as individuals, the claims against

-18-

Defendants Haines and Hageman should be dismissed. (Doc. 19, at 7.)  USERRA prohibits employers from discriminating against a person on the basis of that person's military status.  An "employer" is defined as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including . . . a person . . . to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4).  The Sixth Circuit has not addressed the question of whether individual employees may be held personally liable under USERRA.  Other courts that have addressed this issue have found that individual employees may be held personally liable for damages under USERRA. *See Palmatier*, 981 F. Supp. at 532 (holding that the USERRA claim against the individual defendants in their individual capacities for damages may proceed); *Jones v. Wolf Camera, Inc.*, No. 3:96-cv-2578, 1997 U.S. Dist. LEXIS 23607, at *4 (N.D. Tex. 1997) (concluding that the court is unable to say, at the Rule 12(b)(6) stage and on the basis of the pleadings alone, that the individual defendants do not meet the USERRA definition for "employer"); *Novak v. MacIntosh*, 919 F. Supp. 870, 878 (S.D.S.D. 1996) (finding that the definition of "employer" in the VRRA is closer to the definition found in the Fair Labor Standards Act than that in Title VII of the Civil Rights Act, and thus the VRRA imposes joint and several liability upon employers as both individuals and entities); *Brandsasse v. City of Suffolk, Virginia, et al.*, 72 F. Supp. 2d 608 (E.D. Va. 1999) (finding dispositive the authority of the individual defendant over hiring and firing for the city and thus concluding that the defendant was unable to escape personal liability under USERRA at the Rule 12(b)(6) stage).

Viewing the allegations in the *Complaint* in the light most favorable to Plaintiff, the broad language of 38 U.S.C. § 4303(4) includes Defendants Haines and Hageman.  Plaintiff alleges that

Defendant Haines was a member of the interviewing panel for the position of Parole Services Supervisor, which Plaintiff was denied. (Doc. 1, ¶1, 28.)  Plaintiff alleges that Defendant Hageman had the power to bring the ODRC into compliance with USERRA by promoting Plaintiff. (Id. at ¶49.)  Plaintiff identifies Defendant Haines as the Regional Administrator of the ODRC and Defendant Hageman as the Deputy Director of the Adult Parole Authority of the ODRC. (Id. at ¶56, 64.)  These titles are suggestive of the Defendants' authority with respect to the hiring and firing decisions at the ODRC.  Given the standards to be applied at this juncture and on the basis of the pleadings, the Court is unable to say that Defendants Haines and Hageman are not persons "to whom the employer has delegated the performance of employment-related responsibilities."  Defendants offer no argument to the contrary.  Thus, the Magistrate Judge concludes that Defendants Haines and Hageman cannot escape liability under USERRA at this stage of the proceedings.

### III. DECISION

For the foregoing reasons, the Magistrate Judge recommends that the *Motion for Judgment on the Pleadings* filed by Defendants be GRANTED in PART and DENIED in PART.  Plaintiff's claims against Defendant ODRC are barred by the Eleventh Amendment, accordingly the Magistrate Judge recommends that these claims be dismissed.  Plaintiff's claims against Defendants Haines and Hageman in their individual capacities for damages are not barred by the Eleventh Amendment and the Magistrate Judge recommends that these claims be permitted to proceed.

> s/ Kenneth S. McHargh
> Kenneth S. McHargh
> United States Magistrate Judge

Date: April 28, 2008

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

-20-

Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).